# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| DR. KEITH F. BELL,<br><br>   *Plaintiff,*<br><br><br>vs.<br><br><br>BOARD OF EDUCATION, BASEHOR-<br>LINWOOD UNIFIED SCHOOL DISTRICT<br>NO. 458, et al.,<br><br>   *Defendants.* | Case No. 22-cv-02135-EFM |

## MEMORANDUM AND ORDER

Defendants Board of Education, Basehor-Linwood Unified School District No. 458, Leavenworth County, Kansas ("U.S.D. 458"), Susan Mayberry ("Mayberry") and Scott Russell ("Russell") have brought the present Motion to Dismiss (Doc. 7) before this Court.  In their Motion, Defendants seek dismissal of Plaintiff Dr. Keith F. Bell's claims for copyright infringement and violation of the Digital Millennium Copyright Act.  Specifically, Defendants argue that Plaintiff insufficiently served process under Rule 12(b)(5) and fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In response, Plaintiff requests an extension of time to cure the deficient service of process.  For the reasons set forth below, the

Court denies Defendants' Motion without prejudice and grants Plaintiff an extension to cure the deficient service of process.

## I.      Factual and Procedural Background[1]

Plaintiff is an author best known for his famed book, "Winning Isn't Normal" ("WIN"). The name actually applies to two separate copyrighted works: a book by that title and the WIN "Passage," a one-page excerpt from the book.  Plaintiff offers licenses to use this material at self-described "fair and reasonable rates."

Not only has Plaintiff realized some measure of fame through his publications, but he has also attained a level of notoriety within federal courts for his "business model of litigation."[2] Indeed, Plaintiff "zealously seeks out and litigates unauthorized uses of the WIN Passage."[3]  For example, "[b]etween 2006 and 2017, [Plaintiff] filed over 25 copyright lawsuits."[4]  As evidenced by the slew of recent cases bearing his name, that number has only gone up since then.[5]  This business model appears to have been quite profitable in that Plaintiff has received at least 90 different settlements since 2006.[6]  However, the tides may be changing for Plaintiff as those he

---

[1] The facts are taken from Plaintiff's Complaint unless otherwise cited and are considered true for the purposes of this Order.

[2] *See Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 326 (5th Cir. 2022) (addressing very similar copyright infringement claim brought by Plaintiff against a school district).

[3] *Id.* at 319.

[4] *Id.*

[5] *See, e.g.*, *Bell v. Moon Area Sch. Dist.*, 2019 WL 7482264 (W.D. Pa. 2019); *Bell v. Crawford Indep. Sch. Dist.*, 2020 WL 5370592 (W.D. Tex. 2020); *Bell v. Chicago Cubs Baseball Club, LLC*, 2020 WL 550605 (N.D. Ill. 2020); *Bell v. Scarborough*, 2021 WL 1822304 (W.D. Tex. 2021); *Bell v. Magna Times, LLC*, 2020 WL 1692816 (D. Utah 2020).

[6] *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 529 F. Supp. 3d 605, 617 (N.D. Tex. 2021), *aff'd*, 27 F.4th 313 (5th Cir. 2022); *see also* Josh Verges, *Rosemount school district to pay author $40,000 for unauthorized sports tweets*, Pioneer Press (2013), https://www.twincities.com/2018/10/03/rosemount-school-district-to-pay-author-40000-for-unauthorized-sports-tweets/ (reporting Plaintiff received $40,000 in settlement for "[t]hree tweets and a retweet" of the WIN Passage).

sues wise up to his tactics of "demand[ing] an immediate settlement for an amount that is just cheap enough to discourage the defendant from mounting a fair use defense."[7]  Defendants' brief in the present case is full of citations to Plaintiff's very recent losses in federal court and the ensuing attorney fees awards against Plaintiff.

In contrast, Defendants are comprised of a school district and two of the school's sports coaches.  Plaintiff is suing Defendants over four distinct uses of the Passage on Defendants' social media pages between February 12, 2017, and March 9, 2019.  Russell, as coach of the Boys Track and Field, posted the Passage on the team's Twitter page three times.  Mayberry posted the Passage once on the softball team's Facebook page.  The social media pages have "over 905 Twitter followers and . . . 822 Facebook followers," respectively.  As of April 13, 2022, Defendants have not taken down Mayberry's post.  In posting the Passage online, Defendants did not credit Plaintiff as the author nor include any copyright information.

Upon discovering these uses, Plaintiff provided a cease-and-desist letter to Defendants on April 15, 2019.  Plaintiff then waited over two years to send another letter demanding that Defendants remove the still-offending posts.  Plaintiff filed the present case pro se on April 14, 2022. Defendants filed the present Motion on June 21.  The Motion became ripe for ruling on July 26 when Defendants submitted their Reply.

The following facts are taken from an affidavit attached to Defendants' Motion.  In attempting to serve Defendants, Plaintiff walked onto the school's campus and hand delivered copies of the Complaint and three "Summons in a Civil Action" to Sherry McKinley.  McKinley works for the school as a secretary.  At no time has she been authorized to accept service of process

---

[7] *Id.* (further citation, quotations, and ellipses omitted).

on behalf of any of the Defendants in this case.  She informed Plaintiff as much, only to have Plaintiff insist that he could leave the documents with anyone in the office.  Plaintiff states in his Response that he believed at the time in good faith that he had properly affected service of process.

## II.  Legal Standards

### A.  Insufficient service of process

Service of process upon a "state-created government organization" is only proper if a copy of the summons if delivered to the organization's chief executive officer or otherwise is accordance with state law.[8]  K.S.A. § 60-304(d)(4) authorizes service of "any other public corporation, body politic, district or authority, by serving the clerk or secretary or, if the clerk or secretary is not found, any officer, director or manager thereof."  As interpreted by Kansas courts, "[t]he clerk or secretary refers to someone with executive authority for the governmental entity, rather than a clerical employee."[9]

Service upon an individual may be made in person, by leaving a copy at the individual's dwelling place with someone of suitable age and discretion who resides there, or by delivery to an agent authorized by appointment or law to accept service of process.[10]

Service is insufficient where a party serves the wrong person or serves an individual not permitted to accept service.[11]  The burden is on the plaintiff to make a prima facie showing that the service satisfied the statutory and due process demands for the court to exercise jurisdiction.[12]

---

[8] Fed. R. Civ. Pro. 4(j)(2), 4(e)(1) (authorizing service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made").

[9] *Young v. Turner Unified Sch. Dist. No. 202*, 293 P.3d 816 (table), 2013 WL 518315, at *1 (Kan. Ct. App. 2013).

[10] Fed. R. Civ. P. 4(e)(2)(A)-(C).

[11] *Pope v. Boy Scouts of Am.*, 2006 WL 3199423, at *1 (D. Kan. 2006).

[12] *Id.*

Although the parties may submit affidavits in support of a motion to dismiss for insufficiency of service of process, the court must give the plaintiff the benefit of any factual doubt where they are contested.[13]

## B.   Pro so plaintiff

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[14]  A pro se litigant is entitled to a liberal construction of his pleadings.[15]  If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."[16]  However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[17]  As it relates to motions for judgment on the pleadings generally, the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff."[18]  "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inferences that the defendant is liable for the misconduct alleged."[19]

---

[13] *Id.*

[14] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[15] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[16] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[17] *Id.*

[18] *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    Analysis

**A.    Because the common law factors favor granting Plaintiff an extension to cure service, the Court denies Defendants' Motion without prejudice.**

Defendants first have moved to dismiss Plaintiff's claims under Rule 12(b)(5) for insufficient service of process.  Naturally, whether a plaintiff sufficiently served process speaks to whether the Court may exercise personal jurisdiction over that Defendant.[20]  The Court cannot proceed to the merits of a case over which it does not have jurisdiction.[21]

Defendants make several convincing arguments, supported by McKinley's affidavit, about how Plaintiff failed to properly serve process under either federal or Kansas law.  In his Response, Plaintiff fails to substantively respond to any of these arguments, essentially admitting their legitimacy and waiving the issue.[22]  Even though Plaintiff proceeds pro se, this does not excuse him from making substantive arguments before this Court to preserve his claims.  The burden remains his to make a prima facie showing of sufficient service of process.  Any attempt by this Court to conjure up arguments on his behalf would result in the Court impermissibly acting as Plaintiff's advocate.

In lieu of arguing the merits of his claim, Plaintiff contends that he is entitled to an extension of time under Rule 4(m) and should not have his case dismissed.[23]  Because Plaintiff is

---

[20] *See Bernard v. Husky Truck Stop*, 45 F.3d 439 (table), 1995 WL 4087, at *1 (10th Cir. 1995).

[21] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

[22] *See Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 1009 (D. Kan. 2018) (holding that when "plaintiffs don't respond substantively to defendants' argument . . . [t]he court thus assumes that plaintiffs have abandoned [the issue]"); *see also Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (upholding dismissal of plaintiff's claim because of failure to address defendant's argument); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of her contentions that have been adequately briefed for our review.").

[23] Cited by Plaintiff's Response as Fed. R. Civ. Pro. 4(j).

pro se, the Court will construe Plaintiff's Response as a motion for an extension of time to effect service.  Under Rule 4(m), the Court must grant a motion for extension of time "if the plaintiff shows good cause."  Even in the absence of good cause, courts still have discretion to grant an extension should the situation warrant one.[24]  Various factors relied upon by courts in determining whether to exercise this discretion include "whether the plaintiff is proceeding pro se, whether the defendant had actual notice of the lawsuit, the danger of prejudice to the defendant, the length of the delay, and whether the applicable statute of limitations would bar a re-filed action."[25]  As stated by the Tenth Circuit, "[t]he general rule is that when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant."[26]

The only argument Plaintiff proffers to support a showing of good cause is that he served McKinley "in good faith."  In other words, he truly believed that he had properly served process to the Defendants—his failure to do so was inadvertent.  However, "inadvertence or negligence alone do not constitute 'good cause' for failure of timely service."[27]  This rule applies even when a party proceeds pro se.[28]  Accordingly, Plaintiff has not shown good cause.

---

[24] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995) ("[A] plaintiff who has failed to show 'good cause' for a mandatory extension of time may still be granted a permissible extension of time within the district court's discretion.").

[25] *Kelley v. City of Atchison, Kan.*, 2021 WL 2550171, at *3 (D. Kan. 2021).

[26] *Gregory v. U.S./U.S. Bankr. Ct. for Dist. of Colo.*, 942 F.2d 1498, 1500 (10th Cir. 1991) (further quotations and citation omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1354 (3d ed. 2004) ("The reluctance of the courts to dismiss an action when there is a possibility that effective service will be completed is understandable inasmuch as the dismissal would be without prejudice and probably would lead to the reinstitution of the suit by the plaintiff. Thus, dismissal needlessly burdens the parties with additional expense and delay and postpones the adjudication of the controversy on its merits.") (citations omitted).

[27] *In re Kirkland*, 86 F.3d 172, 176 (10th Cir. 1996).

[28] *See id.*

Therefore, Plaintiff must rely on this Court's discretion to receive an extension of time. Given that service here was insufficient yet curable, the Court finds it best to quash service and give Plaintiff an opportunity to re-serve Defendants. The relevant factors also support granting an extension in this case.

First, the Court notes that Plaintiff is the unusual pro se plaintiff who can be expected to have some familiarity with the Federal Rules of Civil Procedure based on his status as a "professional litigant" who has "filed over 26 copyright infringement lawsuits since 2006 and obtained settlements from at least 90 different alleged infringers."[29] Nevertheless, a plaintiff's pro se status has historically weighed in favor of granting an extension.

Second, Defendants almost certainly had actual notice of the lawsuit because McKinley received the service of process and likely informed Defendants. This inference is further supported by Defendants bringing the present Motion less than two months after the Complaint was filed in this case.

Third, there is no evidence or argument that granting an extension would result in any prejudice to Defendants.

Fourth, if an extension were granted, there would essentially be a ten-month delay between the filing of the Complaint and proper service on Defendants. Defendants have made no showing as to how granting an extension after this delay would prejudice them. Accordingly, this factor weighs in favor granting an extension.

---

[29] *See Bell v. Eagle Mountain*, 529 F. Supp. 3d at 617 (further quotations and citation omitted).

-8-

Finally, the statute of limitations for copyright infringement is three years.[30]  "Under the majority view, a claim for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge."[31]  It is worth noting "that the separate-accrual rule attends the copyright statute of limitations."[32]  Under this rule, the statute of limitations runs from each "discrete infringing act[]."[33]  "In short, each infringing act starts a new limitations period."[34]  As applied by courts, this rule means that the statute of limitations runs from the date a defendant posted the copyrighted material online—whether that post remained online is irrelevant.[35]

Assuming *arguendo* that Defendants violated Plaintiff's copyright rights, the last infringing act occurred on March 9, 2019, more than three years before Plaintiff filed suit.  Giving Plaintiff the benefit of the doubt as neither party argues the issue, Defendants did not at that time realize their posts infringed upon Plaintiff's copyright.  However, Defendants would have realized their posts constituted infringement on April 15, 2019, when Plaintiff informed Defendants of the same.  For the purposes of this Order, April 15, 2019, is the statutory date of accrual.  More than three years have passed since then, legally barring Plaintiff from bringing any claim against Defendants should his claim be dismissed. Therefore, this factor weighs in favor of granting an extension.[36]

---

[30] 17 U.S.C. § 507(b).

[31] *Diversey v. Schmidly*, 738 F.3d 1196, 1200 (10th Cir. 2013) (quotations and citation omitted).

[32] *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).

[33] *Id.*

[34] *Id.*

[35] *See Bell v. Oakland Cmty. Pools Project, Inc.*, 2020 WL 4458890, at *5–6 (N.D. Cal. 2020) (compiling caselaw on this subject).

[36] *See, e.g.*, *Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1275 (D. Kan. 2011) (holding that expiration of statute of limitations regarding pro se plaintiff's claim favored granting extension).

Accordingly, the Court in its discretion quashes service and grants Plaintiff an extension of time to effectuate proper service upon Defendants.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 7) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff shall have sixty (60) days from the date of this Order to effect proper service.  If Plaintiff fails to timely serve process on Defendants within the extension of time permitted, Defendants may refile their motion to dismiss.  At that time, Defendants may submit a motion for attorney fees—and supporting documentation showing the reasonableness of those fees—as the prevailing party under 17 U.S.C. § 505.

**IT IS SO ORDERED.**

Dated this 9th day of December, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE